CENTRAL TRUST CO. OF NEW YORK *et al. v.* WABASH, ST. L. & P. RY.
CO., (UNITED STATES TRUST CO. OF NEW YORK *et al.*, Intervenors.)

*(Circuit Court, E. D. Missouri, E. D.* February 11, 1891.)

1. FEDERAL COURTS—JURISDICTION—RECEIVERS—CITIZENSHIP.
   Where the claim made by a railroad company against another is for the retention
   of rolling stock by receivers appointed by the United States circuit court and by a
   new corporation to whom it was transferred, after it should have been turned over
   to claimant, the circuit court, having in the order of transfer reserved the right to
   determine all claims growing out of the subject-matter, has jurisdiction of the con-
   troversy, though the parties are corporations of the same state.

2. PLEADING—INTERVENTION—MISJOINDER OF PARTIES.
   Where such claim is preferred by intervention in a pending suit against defend-
   ant, and it appears that the claim is fully vested in the intervenor, it is improper
   to join with it in the petition the original plaintiff, and a demurrer to the petition
   will be sustained on that ground.

3. SAME—DEMURRER—LIMITATION.
   The objection that the claim was barred because not presented within the time
   limited by an order theretofore made in the cause should be raised by plea, and not
   by demurrer.

4. SAME—PENDING APPEAL.
   It cannot be be objected by demurrer that the intervenor had prosecuted an ap-
   peal from a former order made in regard to its claim, where the fact of such ap-
   peal does not appear on the face of the petition.

On Demurrer to Intervening Petition.

*Theodore Sheldon,* for intervenors.

*Wells H. Blodgett* and *F. W. Lehman,* for Wabash Western Railway
Company.

THAYER, J.   This is an intervening proceeding by the Omaha & St.
Louis Railway Company (hereafter called the Omaha Company) to re-
cover the value of the use of certain cars and rolling stock alleged to have
been retained and used by Receivers Humphreys and Tutt and by the
Wabash Western Railway Company (hereafter called the new Wabash
Company) for the period of three years and three months, after they
should have been turned over to the Omaha Company, or to the re-
ceiver McKissock, under whom it claims, and to all of whose rights it
claims to have succeeded.   A very full statement of the facts leading up
to the controversy will be found in the opinion of Judge SHIRAS, 42
Fed. Rep. 343, in the case of *U. S. Trust Co.* v. *Wabash, St. L. & P. Ry.
Co.*   The intervenor's claim for the use of the cars and rolling stock now
in question having been dismissed by Judge SHIRAS for want of juris-
diction, the claim has since been interposed in this court in the form of
an intervening petition, and to such petition a demurrer has been filed.
The first and second grounds of demurrer are that this court is without
jurisdiction to hear and determine the controversy, because it has not
the custody of any property of the new Wabash Company, or of the old
Wabash, St. Louis & Pacific Railway Company (hereafter called the old
Wabash Company,) and because the Omaha Company and the old and
new Wabash Companies are Missouri corporations.   It appears to the
court that these objections to the jurisdiction are clearly untenable, so

far as a portion of the claim is concerned; and, if the court has jurisdiction to allow a part of the claim, these points of the demurrer must be overruled. A part of the claim is based on the alleged retention and use by the receivers of this court (to-wit, Messrs. Humphreys and Tutt) of certain cars and rolling stock, after the same should of right have been turned over to the United States Trust Company, or to Receiver McKissock. If the claim is valid, it is a debt contracted by the receivers in the course of the operation of the railway property committed to their charge, which the court must protect. It is one of those claims which the court reserved to itself ample power to protect before it parted with the custody of the mortgaged property, both by its decree of foreclosure of January 6, 1886, and by orders made in said cause on December 31, 1886, and March 30, 1887, as well as by an order made therein on April 14, 1888. A reference to these orders is all that is deemed necessary to show that the court authorized Messrs. Humphreys and Tutt to transfer the railway property in their charge to the new Wabash Company, only on condition that all debts contracted by the receivers, whether then established or thereafter ascertained, should be paid by the transferee; and that it reserved to itself full jurisdiction to determine as to the validity and amount of all claims then pending or subsequently presented against its receivers, and to make the necessary orders for the payment of all such claims as might thereafter be allowed, and, if need be, to enforce the payment of such claims out of the property transferred by its receivers to the new Wabash Company.

2. The next ground of demurrer is that there is "an improper joinder of parties plaintiff," and this objection to the petition, though not important, seems to be well founded. The intervening petition is preferred by the Omaha Company and the United States Trust Company as co-plaintiffs, but the fourth paragraph seems to indicate that the claim sued upon is fully vested in the Omaha Company. If such is the fact, the United States Trust Company is an unnecessary plaintiff.

3. The next objection is that there is an improper joinder of causes of action, because a claim against the receivers for the retention and use of rolling stock by them, is united with a claim against the new Wabash Company for the retention and use of the same property by it, subsequent to the transfer of the property to it by Receivers Humphreys and Tutt. As the intervenor shows title in itself to both claims, it may sue on both claims in the same petition, unless this court is without jurisdiction as to that part of the claim founded upon the retention and use of rolling stock by the new Wabash Company, after it acquired possession thereof from the receivers. The most important question arising on the demurrer, and the only one attended with any doubt, is the one last suggested,—that is to say, whether the claim last mentioned arises out of the foreclosure proceedings against the old Wabash Company in such manner that the court may take jurisdiction of the same as incidental to the foreclosure proceedings, without reference to the citizenship of the parties, or the present custody of the mortgaged property. It cannot be successfully denied that this court had primary jurisdiction to

make a final apportionment of rolling stock as between the receiver of the Omaha Division and Messrs. Humphreys and Tutt, receivers of the old Wabash Company, at the time it remitted the determination of that question to the United States circuit court for the southern district of Iowa. Incidental to that power, it also had the right to require its receivers to pay a reasonable compensation to the receiver of the Omaha Division, for the use of any cars belonging to the Omaha Division that were withheld during the period of the final accounting and apportionment. These were matters strictly incident to the foreclosure proceeding against the old Wabash Company, and all the parties necessary to a complete and final division of the rolling stock were before this court. By its order of January 6, 1886, made in this cause, (*vide* 42 Fed. Rep. 343,) directing a temporary division of rolling stock, and remitting the matter of a complete final apportionment to the Iowa court, this court did not divest itself of jurisdiction over the subject-matter. The division of rolling stock then ordered was partial and temporary, and for public convenience; and the clause of the order referring the final apportionment to the Iowa court was simply permissive. It authorized the parties to the controversy to litigate elsewhere a question properly incident to this cause, that might as well have been litigated here. If the jurisdiction of the court to which "the matter of an equitable division and apportionment" was referred, is for any reason inadequate to do full and complete justice between the parties, no reason is perceived why either of the litigants or their successors in interest may not now have recourse to this court, if its jurisdiction over the subject-matter is for any reason more extensive. It is insisted, however, that this court has no power to compel the new Wabash Company to pay for the use of the rolling stock, since the delivery of the same to it by Receivers Humphreys and Tutt, although it has had the use and possession of rolling stock that of right belonged to the Omaha Division. It is said that this is an independent wrong, in no wise connected with the foreclosure proceedings, for which it must answer elsewhere than in this jurisdiction. Whether this position is tenable depends upon the circumstances and conditions under which it received possession of the property from Messrs. Humphreys and Tutt. If the transfer of the property to it was at the time absolute and unconditional, it might be conceded that the claim would not be within the jurisdiction of the court; but such is not the fact. At the time the transfer was ordered there were many pending and undetermined claims against the receivers, including the very claim now in controversy, which had been remitted for final adjustment to the Iowa court. Such pending and undetermined claims against the receivers were in effect claims against the property in their hands. This court could not, under the circumstances, and its orders and decrees of January 6, 1886, December 31, 1886, March 30, 1887, and April 14, 1888, show that it did not make an unconditional transfer of the property in its possession to the new Wabash Company. In effect it authorized the transfer to be made subject to its right to adjudicate all claims and controversies growing out of or in any wise incident to the foreclosure pro-

ceedings, whether then pending or that might thereafter arise; and it reserved to itself the power to retake the mortgaged property, if necessary, to enforce obedience to such further orders as it might make.   The new Wabash Company was also required to enter its appearance in this cause, and submit itself to the jurisdiction of the court, which it did on May 14, 1888.   The matter of the division of rolling stock between the receiver of the Omaha division and Receivers Humphreys and Tutt was a pending controversy when the transfer took place.   The new Wabash Company had notice of the pendency of that controversy.   It also had notice of the fact that the division of the rolling stock theretofore ordered was merely provisional, and that one of the probable incidents of the controversy would be an order requiring it to pay a reasonable compensation for the use of rolling stock during the period of the accounting, if it should appear in the course of such trial that the preliminary apportionment of January 6, 1886, was not fair and equitable, or was not in accordance with the legal rights of the Omaha Division bondholders.   In view of all these circumstances it must be held that this court lost none of its jurisdiction by the transfer of the property in question to the new Wabash Company; that, in so far as the claim in controversy is concerned, the possession of the property by the latter company should be treated as a continuation of the receivers' possession; and that this court has the same power to adjudge that the new Wabash Company pay a reasonable compensation for rolling stock of the Omaha Division withheld and used during the accounting suit, and thereafter until it was restored to the true owner, that it would have if the property had remained in the custody of its receivers.   The transfer of the property in question, considering the circumstances under which it was authorized, cannot be held to have deprived the court of jurisdiction over a controversy that had arisen when the transfer took place, concerning the title to a portion of the property transferred.   It necessarily retained jurisdiction to dispose of every question incident to that controversy, and one of the obvious questions that would arise and demand adjustment was the question as to the compensation that ought to be allowed for the use of rolling stock pending the final apportionment, and until the decree making an apportionment was fully executed.   *Minnesota Co.* v. *St. Paul Co.*, 2 Wall. 609.

4. The petition is also demurred to on the ground that the entire claim is barred by the provisions of an order made in this cause on March 30, 1887, limiting the time for the presentation of claims against Receivers Humphreys and Tutt.   Concerning this objection it is sufficient to say that it should be made by plea rather than by demurrer. I am of the opinion, however, that the present intervention is not within the terms of the order of March 30, 1887, because prior to that time this court had remitted the entire controversy concerning the Omaha Division rolling stock to the United States circuit court for the southern district of Iowa, and the matter was then under investigation in that court.   Messrs. Humphreys and Tutt were at the time parties to the proceeding pending in the Iowa court.   The claim covered by the pres-

ent intervention is a part and parcel of the controversy referred to the Iowa court for final adjustment, and it would be unreasonable to hold that the intervenor is barred of its remedy by the order of March 30, 1887, when it has in fact been prosecuting its claim in another jurisdiction pursuant to the direction given by this court in its order of January 6, 1886.

5. Another objection to the intervention is that from the order made by the United States circuit court for the southern district of Iowa (42 Fed. Rep. 343) the intervenor prosecuted an appeal to the supreme court of the United States which is still pending, and that such appeal precludes any proceedings in this jurisdiction until the appeal is determined. The intervening petition does not show, however, that such an appeal has been taken, and the point is for that reason not tenable on demurrer. In this connection, however, I think it proper to add that, whether the plea of *lis pendens* would or would not be tenable in view of the alleged appeal, the court in either event would not feel called upon to enter into a trial of this cause until the appeal is disposed of. The demurrer will be sustained on one ground, namely, the improper joinder of parties plaintiff. In all other respects it is overruled.